## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| C.B., by his parent CONNIE BIXBY, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 08-57-P-H |
| | ) | |
| MAINE SCHOOL ADMINISTRATIVE | ) | |
| DISTRICT NO. 40, et al., | ) | |
| | ) | |
| *Defendants* | ) | |

### *RECOMMENDED DECISION ON MOTION OF DEFENDANT THOMAS SHRIVER TO DISMISS*

Defendant Thomas Shriver, one of four remaining defendants in this action,[1] moves to dismiss the claims asserted against him in the amended complaint.[2] Defendant Thomas Shriver's Motion to Dismiss ("Motion") (Docket No. 15). I recommend that the court grant the motion in part.

### I.  Applicable Legal Standard

The motion invokes Fed. R. Civ. P. 12(b)(6). *Id*. at 2. As the Supreme Court has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

---

[1] The plaintiff's motion to dismiss defendant Robert Strong was granted without objection on April 30, 2008. Docket Nos. 23 & 24.

[2] Shriver's motion to dismiss was filed before the plaintiff amended her complaint to add a claim for negligent infliction of emotional distress. Shriver expressly extended his arguments to that count. Defendant Thomas Shriver's Reply Memorandum of Law in Support of Motion to Dismiss ("Reply") (Docket No. 29) at 1.

1

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).[3]

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Id.* "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

## II. Factual Background

The amended complaint includes the following relevant factual allegations.

The minor plaintiff (CB) was a student at Medomak Valley High School, the Alternative School (the "Alternative School"), at all relevant times. Plaintiff's First Amended Complaint ("Complaint") (Docket No. 22) ¶ 3. Defendant Thomas Shriver ("Shriver") was the immediate supervisor of defendant Amy Bramhall Shriver ("Bramhall") within defendant Maine School Administrative District No. 40 ("MSAD 40") beginning in August 2005. *Id.* ¶ 10. He was CB's teacher from August to November 2005. *Id.* In late 2005 or early 2006, Shriver became romantically involved with Bramhall and is currently her husband. *Id.*

---

[3] In so explaining, the Court explicitly backed away from the Rule 12(b)(6) standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. at 45-46). The Court observed: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969.

Beginning in March 2005 and ending in November 2005, Bramhall used her position as a teaching assistant at the Alternative School to engage in repeated gross sexual assaults on CB, then aged 14 or 15. *Id.* ¶ 13. This sexual abuse occurred during and after school hours, in school-related off-campus activities, in Bramhall's vehicle which, as part of her assigned duties, she used to transport CB to and from school and school-related activities, at Bramhall's home, and at other locations. *Id.* During that time Bramhall furnished CB with alcoholic beverages and cigarettes and solicited him to buy illegal drugs. *Id.*

On many occasions during this period, school staff and students observed Bramhall return CB late to the Alternative School from school-sponsored activities, sometimes hours late. *Id.* ¶ 16. Bramhall was often questioned about these late returns, but her excuses were never investigated further. *Id.* In August 2005, CB began the new school year at the Alternative School. *Id.* ¶ 21. Shriver was CB's new teacher, and Bramhall continued to be assigned to him as a teacher's assistant and mentor. *Id.* Shriver gave Bramhall unsupervised access to CB for field trips and off-campus activities on an almost daily basis. *Id.*

In October 2005, CB told Bramhall that he wanted to terminate their relationship. *Id.* ¶ 23. At about this time, Shriver told other students at the Alternative School that CB was claiming to have a sexual relationship with Bramhall. *Id.* He told the other students that the allegations were false and a product of CB's imagination. *Id.* Shriver told CB that no action would be taken to protect him from further abuse and humiliated him in front of his peers. *Id.* ¶ 24. CB was forced to leave the Alternative School when it became known that he was the student who had been sexually abused by Bramhall. *Id.*

Despite having actual notice of allegations of sexual abuse of CB at the hands of Bramhall, Shriver took no action against Bramhall until the sexual relationship was well over

and CB had reported it to the law enforcement authorities. *Id*. ¶ 29. Shriver treated CB in a hostile fashion and took no action to protect him. *Id*. At about this time, Shriver became romantically involved with Bramhall. *Id*.

### III.  Discussion

The amended complaint asserts four claims against Shriver:  Count IV (violation of 42 U.S.C. § 1983), Count VI (intentional infliction of emotional distress), Count VII (aiding and abetting battery), and Count VIII (negligent infliction of emotional distress.)  Complaint ¶¶ 44-47, 52-67.[4]

### A.  Section 1983 Claim

Count IV of the amended complaint alleges that Shriver and others harmed CB by "not preventing the continuation of [the] relationship [between CB and Bramhall] after they were notified of the same; [Shriver was] recklessly indifferent to the violation of Plaintiff's constitutional rights."  *Id*. ¶ 46. It makes no factual allegations specifically against Shriver, although it does make such allegations against defendant Josh Carpenter. *Id*. ¶ 45. The count is asserted against the "Supervisory Defendants," defined earlier as Carpenter and Shriver, *id*. ¶ 11, in both their "individual and their official capacities," *id*. at 14.

Shriver contends, Motion at 4-6, that this claim is barred by Title IX, or 20 U.S.C. § 1681(a), the basis of Count I of the amended complaint, which is asserted against defendant MSAD 40 alone, Complaint ¶¶ 12-34. He bases this argument on *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165 (1st Cir. 2007). In that case, the plaintiffs brought claims under Title IX and Section 1983 against a school committee and a school superintendent arising out of incidents in which the plaintiffs' kindergarten-student daughter was allegedly sexually harassed by an older male student. *Id*. at 169-70, 176. Noting that the Supreme Court held in *Middlesex County*

---

[4] Counts VII and VIII are listed out of order in the plaintiff's amended complaint. *Id*. at 17, 18.

*Sewer. Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20-21 (1981), that section 1983 "cannot be used to enforce a statutory right when that statute's remedial scheme is sufficiently comprehensive as to demonstrate Congress's intent to limit the available remedies to those provided by the statute itself," 504 F.3d at 176, the First Circuit held that "we see no problem in holding section 1983 actions, including section 1983 actions against individuals, precluded by Title IX, even though such a holding would deprive plaintiffs of the right to seek relief against individuals alleged to have been responsible for conduct violative of Title IX[,]" *id*. at 178. This holding seems clearly to bar the instant plaintiff's section 1983 claim against Shriver.

The plaintiff argues, however, that "the holding is more limited" than this. Plaintiff's Response and Memorandum of Law in Opposition to Defendant Thomas Shriver's Motion to Dismiss ("Opposition") (Docket No. 18) at 5. Quoting from later language in the *Fitzgerald* opinion, she asserts that "the case at bar present[s] just such an exception as that suggested in the coda in *Fitzgerald*." *Id*. at 6.[5] Specifically, she relies on the following excerpt:

> We add a coda. Our holding on this point should not be read to imply that a plaintiff may *never* bring a constitutionally-based section 1983 action against an employee of an educational institution concurrently with the prosecution of a Title IX action. For example, when a plaintiff sues an individual who is himself alleged to be immediately responsible for the injury, such an action may lie regardless of whether the claim sounds in equal protection or some other constitutional theory. This is as it should be: when a plaintiff alleges that an individual defendant is guilty of committing an independent wrong, separate and apart from the wrong asserted against the educational institution, a claim premised on that independent wrong would not be "virtually identical" to the main claim.

*Fitzgerald*, 504 F.3d 180 (citation omitted) (emphasis in original).

The section 1983 claim against Shriver that is asserted in the amended complaint, however, is that Shriver violated the Fourteenth Amendment rights of CB "in not preventing the

---

[5] I use the feminine pronoun to refer to the plaintiff herein because it is CB's mother who brings the action.

continuation of [the] relationship [between Bramhall and CB] after [he was] notified of the same; [he was] recklessly indifferent to the violation of Plaintiff's constitutional rights." Complaint ¶ 46. This is precisely the constitutional claim asserted against MSAD 40 in the Title IX claim. *Id*. ¶¶ 16-22, 25-32. The plaintiff lists four specific ways in which she contends Shriver's alleged actions were assertedly "separate and apart from" the constitutional wrongs alleged against MSAD 40. Opposition at 7. The first three of these, failure to investigate, to report, and to increase supervision, are ways in which Shriver did not prevent the continuation of the alleged sexual relationship between CB and Bramhall and/or was recklessly indifferent to any violation of CB's constitutional rights inherent in that relationship. The fourth action, Shriver's alleged "public[] rebuke[]" of CB in front of other students, *id*., is not pled in Count IV. If that action could be construed to be incorporated by reference via paragraph 44 (the "public rebuke" is alleged in paragraph 23 of the amended complaint), Count IV alleges only violation of CB's Fourteenth Amendment rights, Complaint ¶ 46, and the plaintiff cites no authority for the proposition that such action violates any constitutional right bestowed or preserved by the Fourteenth Amendment. Indeed, the amended complaint identifies the constitutional rights alleged to be protected by the Fourteenth Amendment in this case to be the "Due Process right to bodily integrity and to be free from sexual abuse at the hands of a public school employee." *Id*. ¶ 45. Shriver's alleged remarks cannot be construed to violate either of these rights.

The plaintiff also contends that this court's decision in *Doe v. School Admin. Dist. No. 19*, 66 F.Supp.2d 57 (D. Me. 1999), "provides the greatest guidance in resolving the issue of whether Plaintiff is precluded by Title IX from pursuing his Section 1983 claim against Defendant Shriver." Opposition at 6. This argument ignores the fact that Judge Brody decided *Doe* some eight years before the First Circuit's opinion in *Fitzgerald*. In addition, while the

6

plaintiff correctly states, *id.*, that Judge Brody relied on *Lipsett v. University of Puerto Rico*, 864 F.2d 881 (1st Cir. 1988), in reaching his conclusions about the liability of supervisory officials under section 1983, *see* 66 F.Supp.2d at 66-67, she overlooks the fact that the First Circuit in *Fitzgerald* expressly distinguished *Lipsett*, where "we allowed concurrent claims under Title IX and section 1983 (premised on equal protection) to proceed . . . [because] the issue of preclusion was never raised.  Therefore, the opinion has no precedential force with respect to that issue." *Fitzgerald*, 504 F.3d at 179 n.8.

Because *Fitzgerald* requires dismissal of Count IV against Shriver, I do not reach the parties' arguments on the question of whether the amended complaint alleges a cognizable claim against Shriver for violation of CB's substantive due process rights.

### B. Intentional and Negligent Infliction of Emotional Distress

Counts VI and VIII, presented consecutively in the amended complaint, allege that Shriver intentionally (Count VI) and negligently (Count VIII) inflicted emotional distress on CB. Complaint ¶¶ 52-63.  With respect to Shriver, the amended complaint alleges in these counts that his "responses, hostility and utter, deliberate indifference to Plaintiff's plight, were willful, wanton and intentionally designed to inflict emotional distress and/or other discomfort on Plaintiff[,]" *id.* ¶ 53;  that "[t]he statements Defendant Shriver made concerning CB to other students . . . violated Defendant Shriver's special relationship of trust and responsibility . . . he had with CB, by revealing allegations of abuse to others, especially other children[,]" *id.* ¶ 58; and that Shriver "had a unique and special relationship with Plaintiff . . . [and] violated [his] special relationship of trust with CB and [is], thus, responsible for the negligent infliction of emotional distress that has resulted [,]" *id.* ¶ 63.

These are state law tort claims. Shriver contends that he has discretionary function immunity from these claims under the Maine Tort Claims Act ("MTCA"). Motion at 10-13; Reply at 5-6. In the alternative, he argues that the conduct alleged against him does not constitute intentional infliction of emotional distress as a matter of law. *Id*. at 13-16.

The MTCA provides, in relevant part:

> **1. Immunity**. Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:
> \* \* \*
> **C**. Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid;
> \* \* \*
> **E.** Any intentional act or omission within the course and scope of employment; provided that such immunity does not exist in any case in which an employee's actions are found to have been in bad faith[.]
>
> The absolute immunity provided by paragraph C shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized by statute, charter, ordinance, order, resolution, rule or resolve and shall be available to all governmental employees . . . who are required to exercise judgment or discretion in performing their official duties.

14 M.R.S.A. § 8111.

Shriver concentrates his motion on the allegation in paragraph 53, citing case law in which the Maine Law Court extends the absolute discretionary function immunity to governmental employees acting in a supervisory capacity. Motion at 10-13. In response, the plaintiff appears to abandon this claim, asserting that Shriver "misapprehends the nature of Plaintiff's allegations against him[,]" and stating that she has sued Shriver "based on Defendant Shriver's own acts and omissions which have directly injured Plaintiff." Opposition at 12-13. So limited, the two counts arise only from what Shriver is alleged to have told other students

about CB's relationship with Bramhall thus subjecting him to humiliation and ridicule. *Id*. at 13. The plaintiff argues in conclusory fashion that these "statements by Defendant Shriver" were not performed as part of his discretionary functions or duties, were intentional, were "contrary to his obligation as a teacher and supervisor[,]" and not entitled to immunity. *Id.* She cites no authority for these conclusions.

Shriver responds that the amended complaint does not allege any action outside the context of Shriver's supervision of his students, an activity during which he exercises discretion. Reply at 6. Accordingly, he asserts, even if the allegations are true and he commented to his students about rumors involving another student when he should not have, his mistake in doing so is protected by discretionary function immunity. He cites *Norton v. Hall*, 834 A.2d 928, 931-32 (Me. 2002), in support of his position, but that case involves facts so different from those presented here that it is of little help to the court.

It is important to note that two types of immunity are at issue here. The discretionary function immunity is separate from the immunity for intentional acts not undertaken in bad faith. Bad faith is irrelevant to discretionary function immunity. *Morgan v. Kooistra*, 2008 ME 26, ¶ 21, 941 A.2d 447, 454. With respect to the count alleging intentional infliction of emotional distress, discretionary function immunity does not apply. *Gomes v. University of Maine Sys.*, 304 F.Supp.2d 117, 135 (D. Me. 2004). Here, Shriver's alleged action could only have been taken in the course and scope of his employment,[6] so the plaintiff must allege bad faith in order to avoid the immunity provided by the MTCA. Count VI cannot reasonably be construed to

---

[6] The plaintiff appears to agree, asserting that Shriver's alleged actions "were intentional acts which, although made in the course and scope of his employment as a teacher and supervisor, were made in bad faith[.]" Opposition at 15. This assertion appears three paragraphs after what seems to be its opposite: "Nothing Defendant Shriver said can be said to fall within the scope of his employment duties as a teacher or supervisor." *Id*. at 14. I doubt that the plaintiff can have this question both ways for the purpose of opposing the assertion of statutory immunity, and since the statement first quoted appears in the plaintiff's discussion of immunity for intentional acts, I credit it in that context.

9

allege bad faith on Shriver's part. Complaint ¶¶ 53-60. However, when taken together with other allegations in the amended complaint which are incorporated in Count VI by reference, Complaint ¶ 52, and with the benefit of all reasonable inferences to be drawn therefrom, the amended complaint may be construed to allege bad faith, although the question is a close one.

The amended complaint alleges that Shriver intentionally inflicted emotional distress on CB by conduct that was "atrocious, outrageous or utterly intolerable in a civilized community[,]" namely statements to other students revealing intimate and sensitive information about CB; conveying to CB that he would not be protected from further abuse by Bramhall; and impugning CB's veracity to other students by asserting that CB's allegations about Bramhall were false and a product of his imagination. *Id.* ¶ 58. The amended complaint further alleges that Shriver did so after he "may also have begun an affair with Bramhall" or "began having a romantic affair with Defendant Bramhall" and that he "is the current husband of Defendant Bramhall." *Id.* ¶¶ 10, 24, 29. *See Jamison v. OHI*, 2005 WL 3678040 (Me. Super, Nov. 28, 2005), at *8 (evidence of motive to falsify report permits inference that reports were knowingly false and would allow finding of bad faith).

Shriver argues, in the alternative, that the plaintiff's allegations do not amount to intentional infliction of emotional distress as a matter of law because the alleged conduct is not sufficiently extreme and outrageous. Motion at 13-16. He contends that the allegations discussed above fail because "a plaintiff cannot establish an IIED claim as a matter of law based upon discussion of 'private matters,' humiliation of a person at work, and demotion from a job position." *Id.* at 16. But, this case is distinguishable from those cited by the defendant, *id.* at 16, all of which involve employment or a job demotion. *See Walton v. Nalco Chem. Co.*, 272 F.3d 13, 19 (1st Cir. 2001) (plaintiff alleged extreme and outrageous conduct by employer); *Halco v.*

*Davey*, 2007 ME 48, ¶¶ 2-3, 14, 919 A.2d 626, 628, 631 (former employee alleged that employer breached non-disparagement clause in settlement agreement in a manner that also constituted extreme and outrageous conduct); *Staples v. Bangor Hydro-Elec. Co.*, 561 A.2d 499, 501 (Me. 1989) (plaintiff alleged that supervisor humiliated him at staff meetings and demoted him without cause).  When it is an adult teacher who is alleged to have deliberately humiliated a minor student in front of his peers the law must take other considerations into account.  That is, "all possible bounds of decency," *Fiacco v. Sigma Alpha Epsilon Fraternity*, 484 F.Supp.2d 158, 166 (D. Me. 2007), must and can vary with the circumstances of a given case.   On the facts here alleged, the amended complaint sufficiently states a claim of intentional infliction of emotional distress against Shriver.

With respect to the count alleging negligent infliction of emotional distress, discretionary function immunity comes into play.  The amended complaint alleges that each of the individual defendants

> had a unique and special relationship with Plaintiff.  Indeed, Maine courts have repeatedly recognized that a student and his teacher share a unique relationship, in which the attitude of the typical teacher is one of personal responsibility for the student's welfare as well as for his education.  Defendants each . . . violated their special relationship of trust with CB and are, thus, responsible for the negligent infliction of emotional distress that has resulted from their violation of that special relationship and the underlying constitutional and State law torts which caused him injury.

Complaint ¶ 63.  Shriver contends that this claim is barred by discretionary function immunity under the MTCA.  Reply at 5.  The first issue for resolution is the identification of the discretionary function in this case.  Shriver characterizes it as his supervision of students.  *Id*. at 6. The plaintiff contends that "[t]hese statements by Defendant Shriver were not performed as part of his discretionary functions or duties as CB's teacher or Defendant Bramhall's

11

supervisor." Opposition at 13. She adds: "Under no circumstances[] could Defendant Shriver's . . . attacks on the Plaintiff's veracity to his peers or violation of Plaintiff's privacy regarding being sexually abused by his teacher be characterized as being in furtherance of Defendant Shriver's discretionary duties as either a supervisor or a teacher in MSAD 40." *Id*. She cites *Hinkley v. Baker*, 122 F.Supp.2d 48 (D. Me. 2000), and *Bridges v. MacLean-Stevens Studios, Inc.*, 201 F.3d 6 (1st Cir. 2000), in support of her assertion that there is a special relationship between a teacher and a student that gives rise to the duty allegedly violated by Shriver in this context. The latter case is not helpful, because the cited language is *dictum* in an opinion that discusses only an alleged violation of the Robinson-Patman Act. 201 F.3d at 11-12. But in the former case, the question was specifically whether there is a unique relationship between a teacher and a student that will provide the basis for a tort claim under Maine law, and this court answered that question in the affirmative. *Hinkley*, 122 F.Supp.2d at 56. Indeed, the tort involved in that case was negligent infliction of emotional distress. *Id*. at 55-56.

Shriver attempts to distinguish *Hinkley* on the ground that "the order denying dismissal in that case pertained to an IIED claim against the person accused of committing the sexual assaults." Reply at 6. In fact, as I have already noted, the court in that case denied a motion to dismiss a claim of negligent, not intentional, infliction of emotional distress. It is true that the defendant teacher in *Hinkley* was alleged to have committed a sexual assault on the student plaintiff, 122 F.Supp.2d at 50, but that distinction is irrelevant here, where, contrary to Shriver's assertion, Count VIII does not allege a claim against him for "failing to prevent the abuse or commenting on the abuse[,]" Reply at 6. Rather, the amended complaint asserts a direct claim against Shriver for negligently inflicting emotional distress by telling CB's fellow students that he had made false allegations of a sexual relationship with a teacher and telling him directly that

he would not be protected from further such abuse.  This claim fits well within the framework established in *Hinkley*.  Thus, it states a claim on which relief may be granted.

Discretionary function immunity was not at issue in *Hinkley*, however.  Another step in the analysis of this claim is necessary.  Where such immunity is claimed,

> the Law Court [has] established a four-prong test to determine governmental immunity: (1) whether the act necessarily involves a basic governmental policy, program or objective; (2) whether the act is essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective; (3) whether the act requires the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental entity involved; and (4) whether the government possesses the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act.

*Gomes*, 304 F.Supp.2d at 135.  This statement of the elements of the test makes obvious the reason for the parties' differing characterizations of the "act" at issue in the present case.  If it is merely Shriver's supervision of students, all of the elements of the test appear to be met; if it is Shriver's alleged statements, all of the elements are not.  Shriver's characterization of the alleged act appears excessively broad; virtually any action taken by a teacher that involved a student could come within the ambit of "supervision of students," and teachers would accordingly have unlimited discretionary function immunity.  That result does not comport with the language of the statute, which clearly contemplates situations in which governmental actions will not be protected by discretionary function immunity.  14 M.R.S.A. § 8111.

Telling CB's fellow students that he had falsely alleged that he was having a sexual relationship with a teacher and telling CB that he would not be protected from abuse by that teacher may necessarily involve a government program (education of children), but it cannot be said to be essential to the accomplishment or realization of that program.  In addition, it may require the exercise of judgment on the part of the teacher (or the lack thereof), but it cannot be

said that a teacher has the authority and duty to make such remarks. So construed, the amended complaint does not allege a claim of negligent infliction of emotional distress for which Shriver is entitled to immunity.

### C. Battery

Count VII alleges that Shriver, among others, "by [his] deliberate indifference facilitated, exacerbated and aided and abetted Defendant Bramhall's battery committed upon Plaintiff." Complaint ¶ 67. Shriver contends that the "Law Court has never clearly stated in the context of a battery claim that a person can be held liable for aiding and abetting a battery committed by another[,]" and, even if it were a cognizable claim, the plaintiff has failed to allege such a claim because the amended complaint "does not aver any affirmative conduct by Mr. Shriver in planning or supporting the alleged sexual assaults." Motion at 16-[17]. He argues that "[t]he Law Court has consistently held that a person has no separate duty to take action to protect another from harm created by third parties." *Id*. at [17] (citation and internal punctuation omitted). In response, the plaintiff asserts that "[i]t has been held that the doctrine of *respondeat superior* applied so as to render a school district liable for a teacher's sexual molestation of a student." Opposition at 16.

Shriver is not a school district nor is he alleged to be the chief officer of a school district. The plaintiff goes on to cite a case applying Nevada law holding that a battery claim by a student against a school district for the student's sexual molestation by a teacher is cognizable under the doctrine of *respondeat superior*. *Id*. Again, the amended complaint in this case does not allege that Shriver is the legal equivalent of a school district.

The plaintiff ends by asserting that this court should adopt the reasoning of the federal district court that construed Nevada law and that the motion to dismiss the battery claim should

not be dismissed because there is no controlling precedent.  The latter is a legal argument that does not find support either in Maine law or in common sense.  If the courts were required to try to a conclusion all claims that were not clearly foreclosed by existing law, the courts would be burdened with much expensive and unnecessary activity.  As for the former assertion, even if this court were to adopt Nevada law as representing a reasonable anticipation of the Maine Law Court's likely action, the Nevada law that the plaintiff proffers does not deal with the liability of an individual teacher for aiding and abetting a tort, but only with that of the body employing a teacher who has committed a tort.  On the showing made, Shriver is entitled to dismissal of Count VII.

### IV.  Conclusion

For the foregoing reasons, I recommend that defendant Shriver's motion to dismiss be **GRANTED** as to Counts IV and VII and otherwise **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of July, 2008.

                                                      /s/  John H. Rich III
                                                      John H. Rich III
                                                      United States Magistrate Judge